UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KARLENA DAWSON, et al., <br><br> Petitioner-Plaintiffs, <br><br> v. <br><br> NATHALIE ASHER, et al., <br><br> Respondent-Defendants. | CASE NO. C20-0409JLR-MAT <br><br> ORDER DENYING TEMPORARY RESTRAINING ORDER |

## I.  INTRODUCTION

Before the court is Petitioner-Plaintiffs Karlena Dawson, Alfredo Espinoza Esparza, Normal Lopez-Nunez, Marjoris Ramirez Ochoa, Maria Gonzalez Mendoza, Joe Hlupheka Bayana, Leonidas Plutin Hernandez, Kelvin Melgar Alas, and Jesus Gonzalez Herrera's (collectively, "Plaintiffs") motion for a temporary restraining order ("TRO"). (Mot. (Dkt. # 2).) Respondent-Defendants Nathalie Asher, Matthew T. Albence, Steven Langford, and United States Immigration and Customs Enforcement ("ICE") (collectively, "Defendants") filed a response. (*See* Resp. (Dkt. # 28).)

1  The court has reviewed the motion, the response, the petition and complaint[1]
2  (Compl. (Dkt. # 1)), the parties' submissions in support of and in opposition to the
3  motion, the relevant portions of the record, and the applicable law.  Being fully advised,[2]
4  the court DENIES the motion.

## II.  BACKGROUND

Plaintiffs are nine individuals currently held in civil detention by ICE at the Tacoma Northwest Detention Center ("NWDC") in Tacoma, Washington.  (*See* Compl. ¶¶ 39-66.)  On March 16, 2020, Plaintiffs filed their complaint, seeking a writ of habeas corpus, or in the alternative, injunctive relief, against Defendants.  (*See id.* at 20.)   Plaintiffs represent that they are "particularly vulnerable to serious illness or death if infected by COVID-19" as a result of their age and/or medical condition.  (*See id.* ¶¶ 39-66.)  Plaintiffs then filed the present motion, in which they seek "immediate release" from detention as they await adjudication of their immigration cases.  (*See* Mot. at 7.)  They argue that "[t]he conditions of immigration detention facilities pose a heightened public health risk for the spread of COVID-19" due to "crowding, the proportion of vulnerable people detained, and often scant medical care resources," in addition to the inability to achieve the social

//

//

---

[1] Petitioner-Plaintiffs' initial filing is a "petition for writ of habeas corpus . . . and complaint for injunctive relief." (*See* Compl. at 1.) For simplicity's sake, the court refers to the parties as "Plaintiffs" and "Defendants" and the petition-complaint as the "complaint."

[2] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4); LCR 65(b)(3).

distancing needed to effectively prevent the spread of COVID-19.  (*See id.*)  The court now considers the motion.

### III.   ANALYSIS

Plaintiffs contend that their continued detention in the face of the COVID-19 pandemic violates their Fifth Amendment right to reasonable safety while in custody.  (*See* Mot. at 12.)  For the reasons set forth below, the court DENIES Plaintiffs' motion for a TRO.

**A.   Legal Standard**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction.  *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977).  A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor," thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation.  *All. for the Wild Rockies v. Cottrell*,

632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the "serious questions" approach supports the court's entry of a TRO only so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at 22.

**B.     Plaintiffs' Motion**

The court concludes that Plaintiffs do not meet their burden to make a clear showing that they are likely to succeed on the merits or that they are likely to face irreparable harm. Therefore, the court DENIES Plaintiffs' motion for a TRO.[3]

    1.  <u>Likelihood of Success on the Merits</u>

To evaluate the constitutionality of a pretrial detention condition under the Fifth Amendment, a district court must determine whether those conditions "amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872, 60 L. Ed. 2d 447 (1979); *see also see also Kingsley v. Hendrickson*, --- U.S. ---, 135 S. Ct. 2466, 2473-74 (2015). Punishment may be shown through express intent or a restriction or condition that is not "reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 539.

//

//

---

[3] Having concluded that Plaintiffs fail to meet the first two prongs of the TRO standard, the court finds it unnecessary to address the third and fourth prongs. Defendants also raise arguments based on Article III standing and the limits of the habeas statutes. Plaintiffs have not had an opportunity to respond to those arguments, and because they are not necessary to resolve Plaintiffs' present motion, the court leaves them for another day.

1           First, Plaintiffs do not present allegations or evidence to show Defendants have an

2    "express intent" to punish Plaintiffs.  (*See generally* Mot.)  Second, preventing detained

3    aliens from absconding and ensuring that they appear for removal proceedings is a

4    legitimate governmental objective.  *See Jennings v. Rodriguez*, --- U.S ---, 138 S. Ct. 830,

5    836 (2018); *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas v. Davis*, 533 U.S. 678,

6    690-91 (2001).  Third, Plaintiffs' current confinement does not appear excessive in

7    relation to that objective.  Plaintiffs do not cite to authority, and the court is aware of

8    none, under which the fact of detention itself becomes an "excessive" condition solely

9    due to the risk of a communicable disease outbreak—even one as serious as COVID-19.

10          Plaintiffs' cited authority addresses the exposure of inmates or detainees to

11   existing conditions within the facility at issue.  *See, e.g.*, *Hutto v. Finney*, 437 U.S. 678,

12   682-83 (1978) (mingling of inmates with infectious diseases with others); *Gates v.*

13   *Collier*, 501 F.2d 1291, 1300 (5th Cir. 1974) (same); *Helling v. McKinney*, 509 U.S. 25 at

14   33, 35 (1993) (placement of inmate with emphasema in a cell with a cellmate who

15   smoked often).  Here, there is no evidence that anyone at NWDC has COVID-19, and

16   Plaintiffs do not address the measures Defendants are taking to prevent such a spread

17   from occurring.  (*See* Resp. at 3-6 (detailing measures to prevent the spread of

18   COVID-19, including suspending social visitation, assessing detainees for fever and

19   respiratory illness, isolating detainees with COVID-19-compatible symptoms, and

20   instructing detainees on hand washing and hygiene).)  Finally, even if Plaintiffs could

21   show a Fifth Amendment violation, Plaintiffs provide no authority under which such a

22   violation would justify immediate release, as opposed to injunctive relief that would

ORDER - 5

leave Plaintiffs detained while ameriolating any alleged violative conditions within the facility. Thus, the court concludes that Plaintiffs fail to meet their burden of clearly showing that they are likely to succeed on the merits of their claims.

    2. <u>Irreparable Harm</u>

Plaintiffs do not show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. The "possibility" of harm is insufficient to warrant the extraordinary relief of a TRO. *See id.* There is no evidence of an outbreak at the detention center or that Defendants' precautionary measures are inadequate to contain such an outbreak or properly provide medical care should it occur.[4] Accordingly, the court concludes that Plaintiffs fail to meet their burden of clearly showing that irreparable harm is likely in the absence of an injunction.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion for a temporary restraining order (Dkt. # 2).

Dated this 19th day of March, 2020.

                                           JAMES L. ROBART
                                           United States District Judge

---

[4] The court is mindful of the gravity and rapidly changing nature of the COVID-19 pandemic. The court emphasizes that this order is based on and extends no further than the narrow set of facts, arguments, and requested relief presently before the court.