UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KARLENA DAWSON, et al., | CASE NO. C20-0409JLR-MAT |
| Petitioner-Plaintiffs, | ORDER TO FILE ADDITIONAL EVIDENCE |
| v. | |
| NATHALIE ASHER, et al., | |
| Respondent-Defendants. | |

Before the court is Petitioner-Plaintiffs Karlena Dawson, Norma Lopez-Nunez, Marjoris Ramirez Ochoa, Maria Gonzalez Mendoza, Joe Hlupheka Bayana, Kelvin Melgar Alas, Jesus Gonzalez Herrera, Alfredo Espinoza-Esparza, and Leonidas Plutin Hernandez's (collectively, "Plaintiffs") second motion for a temporary restraining order ("TRO") (2d TRO Mot. (Dkt. # 36)).  Plaintiffs are six individuals who Respondent-Defendant United States Immigration and Customs Enforcement ("ICE") currently holds in civil detention at the Tacoma Northwest Detention Center ("NWDC")

//

ORDER - 1

in Tacoma, Washington and three who ICE released after Plaintiffs filed this action.[1] Respondent-Defendants Nathalie Asher, Matthew T. Albence, Steven Langford, and ICE (collectively, "Defendants") oppose Plaintiffs' second TRO motion (2d TRO Resp. (Dkt. # 64)).

Due to the recent guidance provided in General Order 20-02, the court declines to hold an evidentiary hearing in this matter at this time. *See* W.D. Wash. Gen. Order 02-20 ¶ 2. Nevertheless, the court requires additional factual information from the parties prior to ruling on Plaintiffs' second TRO motion. Accordingly, the court ORDERS Defendants to file additional evidence, including declarations or affidavits from individuals with personal knowledge, addressing the following questions:

1) Are detainees at NWDC currently able to maintain at least six feet of physical distance from other individuals?
2) What steps have Defendants taken to instruct and/or encourage detainees to maintain at least six feet of physical distance from other individuals, particularly in light of guidance from Department of Homeland Security ("DHS") medical subject matter experts who explain that "social distancing is essential to slow the spread of the coronavirus"? (*See* Ngo Decl. (Dkt. # 37) ¶ 4, Ex. A (Expert Ltr.).)
3) Under what circumstances, if any, are detainees unable to maintain a physical distance of six feet or more from other individuals at NWDC? If detainees are

---

[1] On March 27, 2020, Plaintiffs notified the court that Mr. Espinoza-Esparza and Mr. Hernandez were released from detention. (*See* 1st Not. of Release (Dkt. # 57) at 1.) On March 30, 2020, Defendants notified the court that ICE released Ms. Dawson from immigration custody on an order of supervised release. (*See* 2d Not. of Release (Dkt. # 70) at 1.)

unable to maintain a distance of six feet or more from other individuals, are Defendants taking any measures to mitigate the risk entailed by these circumstances? If so, what are those measures and how will those measures mitigate the risk?

4) How many tests for COVID-19 have Defendants conducted on (a) all individuals present at NWDC, including ICE employees, and (b) of that number, how many tests for COVID-19 have Defendants conducted specifically on detainees at NWDC? Have any of those tests returned positive identifications of COVID-19?

5) How many detainees at NWDC have been placed in isolation for the "14-day observation period" or otherwise been quarantined or isolated due to screening results, symptoms, or any other COVID-19-related reason? (*See* Bostock Decl. (Dkt. # 66) ¶ 14.)

6) What is the total number of detainees that have been transferred to or otherwise placed at NWDC since March 1, 2020?

7) In addition to isolating any individual who shows symptoms or tests positive for COVID-19, what are Defendants' current plans, if any, in the event of a COVID-19 outbreak at NWDC—especially if it becomes widespread—to (a) provide medical care for detainees who contract COVID-19, particularly detainees who are elderly and/or have serious medical conditions and (b) manage the COVID-19 outbreak to minimize the possibility of spread to other individuals within NWDC and to the public at large?

//

8) In the event of a COVID-19 outbreak, do Defendants' current plans include the possibility of release of detainees from NWDC? If so, how will Defendants determine which detainees will be released and how do Defendants plan to prevent or minimize the risk of the spread of COVID-19 from those released detainees to the public at large?

9) Do Defendants currently possess the resources and ability to fully execute the plans referenced above, including necessary medical personnel, facilities, and equipment, including personal protective equipment?

10) As part of Defendants' case-by-case review for release of at-risk detainees who are not subject to mandatory detention provisions, how is each detainee's criminal history taken into account in determining whether to release that individual? (*See* Bostock Decl. ¶ 31.)

Plaintiffs may file additional evidence, if any, including declarations or affidavits from individuals with personal knowledge, regarding the above questions. Plaintiffs should be mindful that the court is interested in current conditions at NWDC specifically, and not conditions at ICE facilities in general or other detention facilities not at issue in this case.

//
//
//
//
//

1          The parties shall file their additional evidence by this Friday, April 3, 2020.

2   Additional briefing and legal argument is not requested and not required.

3          Dated this 1st day of April, 2020.

 

 

 

 

JAMES L. ROBART
United States District Judge